UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION | MDL No. 15-2666 (JNE/DTS) ORDER |

This Document Relates to:
Case No. 23-cv-1425 (*Carl Jones v. 3M Company and Arizant Healthcare, Inc.*)

In December 2020, Carl Jones, a resident and citizen of Louisiana, "underwent surgery during which the Bair Hugger Forced Air Warming system (hereinafter 'Bair Hugger') was used during the course and scope of his surgery at the University Medical Center New Orleans LCMC Health, in New Orleans, Louisiana." (Compl. ¶¶ 2, 7) He alleged that "[c]ontaminants introduced into [his] open surgical wound as a direct and proximate result of use of the Bair Hugger during the subject surgery resulted in [him] developing a periprosthetic joint infection." (Compl. ¶ 8) "As a result of [his] infection caused by the Bair Hugger, [Jones] has undergone numerous procedures following a postoperative infection, requiring intervention, management, and revision surgeries." (Compl. ¶ 9)

In May 2023, Jones brought this action against 3M Company and Arizant Healthcare, Inc. (collectively, "Defendants"). He asserted several claims: negligence; strict liability based on failure to warn; strict liability based on defective design and manufacture; breach of express warranty; breach of implied warranty of merchantability; violation of the Minnesota Prevention of Consumer Fraud Act; violation of the Minnesota Deceptive Trade Practices Act; violation of the Minnesota Unlawful Trade Practices Act; violation of the Minnesota False Advertising Act; consumer fraud and/or unfair and

1

deceptive trade practices under Louisiana law; negligent misrepresentation; fraudulent misrepresentation; fraudulent concealment; unjust enrichment; punitive damages; common law fraud; constructive fraud; gross negligence; and negligent infliction of emotional distress. The case is before the Court on Defendants' Motion for Summary Judgment and Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Theodoros Kelesidis. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment and denies their motion to exclude as moot.

I.     **Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Defendants maintained that summary judgment in their favor is appropriate because (1) "all 19 of [Jones's] claims are time-barred under Louisiana's one-year

prescriptive period"; (2) his "claims . . . fail because [he] lacks admissible evidence of specific causation"; (3) his "failure-to-warn claim fails because no reasonable jury could conclude that a warning was necessary"; (4) his "breach of warranty claim fails because [he] has no evidence of an actionable express warranty, let alone one that was relied upon and caused [him] injury"; (5) "the majority of [his] claims (16 of the 19 claims alleged) are not cognizable under Louisiana law"; and (6) several of his claims "fail . . . on the merits."  Jones responded that his claims under the Louisiana Product Liability Act ("LPLA") and "demand for punitive damages are viable claims"; that "the remainder of his claims are abrogated or not allowed"; that his "claims were timely brought"; that he "proffered sufficient evidence of causation to create a genuine issue of material fact in favor of his claims"; that he "proffered sufficient evidence for a reasonable jury to find that Defendants should have warned medical providers of the link between the [Bair Hugger] and [periprosthetic joint infections] before the [Bair Hugger] was used in [his] surgery"; and that his "claims for punitive damages are subject to Minnesota law, not Louisiana law, and Minnesota law provides for an award of punitive damages in a product liability claim."  Considering Jones's statement that his non-LPLA claims "are abrogated or not allowed," the Court dismisses them and turns to whether his remaining claims are time-barred.  *Cf. Travers v. Chubb Eur. Grp. SE*, 714 F. Supp. 3d 812, 819 (E.D. La. 2024) ("[P]unitive damages cannot be pleaded as an independent cause of action but rather must be requested in conjunction with a cognizable cause of action." (citation omitted)); *Forster v. R.J. Reynolds Tobacco Co.*, 437 N.W.2d 655, 662–63 (Minn. 1989) ("A claim for punitive damages in this state is not an independent tort.").

3

"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492 (repealed 2024); *see Allied World Nat'l Assurance Co. v. Nisus Corp.*, 134 F.4th 821, 826–827 (5th Cir. 2025).[1] "Damage is considered to have been sustained, within the meaning of [Article 3492], only when it has manifested itself with sufficient certainty to support accrual of a cause of action." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 389 (5th Cir. 2021) (alteration in original) (citation omitted). "But '[u]nder Louisiana law, there is a firmly rooted equitable-tolling doctrine known as *contra non valentem agere non currit praescriptio*, which means "[n]o prescription runs against a person unable to bring an action."'" *Allied World*, 134 F.4th at 827 (alteration in original) (citation omitted). "The doctrine tolls prescription under any of four 'exceptional circumstances,' one of which is 'where the cause of action is not known or reasonably knowable by the plaintiff,' termed the 'discovery rule.'" *Bruno v. Biomet, Inc.*, 74 F.4th 620, 623 (5th Cir. 2023) (citation omitted).

"Under the discovery rule, '[a]ctual knowledge is not required' for prescription to start running; 'constructive notice suffices.' 'Constructive knowledge or notice sufficient to commence the running of prescription requires more than a mere apprehension something might be wrong.'" *Allied World*, 134 F.4th at 827 (alteration in original) (citation omitted). "However, 'when a plaintiff suspects something is wrong, he must

---

[1] "In Louisiana, 'limitations periods are often called "prescriptions" or "prescriptive periods."' Under La. Civ. Code art. 3493.1, Louisiana now has a two-year prescription period for torts, but this new provision only applies to actions arising after July 1, 2024." *Allied World*, 134 F.4th at 827 n.3 (citation omitted).

"seek out those whom he believes may be responsible for the specific injury."' 'The duty to act requires an investigation of the injury.'" *Bruno*, 74 F.4th at 624 (footnote omitted) (citation omitted). "When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." *Allied World*, 134 F.4th at 827 (citation omitted). "The discovery rule 'applies only when such ignorance is not willful and does not result from negligence.' In other words, '[w]hen a plaintiff acts reasonably to discover the cause of a problem, "the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant."'" *Bruno*, 74 F.4th at 624 (alteration in original) (footnote omitted) (citation omitted). "Summary judgment is inappropriate where reasonable minds could differ as to the applicability of *contra non valentem*." *Allied World*, 134 F.4th at 827 (citation omitted).

Defendants asserted that Jones's "claims . . . are on their face prescribed under Section 3492" because he "did not commence his action . . . within one year of August 16, 2021," when he was "diagnosed . . . with a presumptive left hip infection," and that *contra non valentem* does not save his claims. Jones responded that *contra non valentem* "makes [his] claim timely." "[B]ecause [he] had no knowledge, constructive or actual, that a [forced air warming system], let alone a [Bair Hugger], was used in his December 17, 2020 hip surgery" until his medical records were reviewed on February 15, 2024, Jones maintained that "the prescription period did not begin to run" until February 15, 2024.[2]

---

[2] In his memorandum, Jones stated that "Plaintiff's medical records were printed for Plaintiff's counsel on November 16, 2023, and those records were reviewed on February

5

In December 2020, Jones underwent left hip surgery. Use of the Bair Hugger during the surgery allegedly resulted in him developing a periprosthetic joint infection. In August 2021, Jones presented to his surgeon by telephone with complaints of left hip pain. His surgeon diagnosed him with a presumptive hip infection and recommended a two-stage revision procedure. Two days later, Jones presented to his surgeon in person. Imaging revealed Jones's "[l]eft hip cup appears loose now which is a change." The surgeon again diagnosed Jones with a presumptive left hip infection and stated that Jones "needs a debridement and 2 stage exchange THA (partial or total exchange could be considered)."

Three surgeries took place in the months that followed.[3] In September 2021, Jones underwent surgery to remove his left hip prosthesis and to place an antibiotic spacer. Purulent fluid was present. In October 2021, after dislocation of his left hip antibiotic spacer, his left hip hardware was removed, an antibiotic spacer was placed, and an irrigation-and-debridement procedure was performed. In December 2021, Jones underwent a left total hip arthroplasty revision. During the surgery, Jones sustained an

---

15, 2024." To support the proposition, Jones cited an exhibit attached to a declaration of his attorney. The exhibit contains (1) medical records that were printed on April 4, 2022, (2) medical records that were printed on July 20, 2022, (3) a fax sent by a drug store to Jones on January 18, 2024.

     The record does contain medical records that were printed on November 16, 2023. They are attached to a declaration of one of Defendants' attorneys.

[3]    The same surgeon performed each surgery. The surgeon had performed hip surgery on Jones in September 2019 after Jones's hip was crushed at work.

iatrogenic femoral fracture. His surgeon performed an open reduction and internal fixation.

Jones was deposed in May 2024. Asked why he sued 3M, Jones responded:

> I sued 3M, I saw a commercial on TV and the result was the same thing I was going through, my infection with my hip replacement. And I just called the number and -- you know, because I was going through the same symptoms that they told me about, you know.
>
> They was telling me about the surgery they did and made the thing that -- 3M thing, the Bair Hug blanket or whatever may cause the injuries, it'll cause the infection and things. So I just called the number and that was it.

He testified that he saw the commercial "[a] few years ago"; that his attorneys "got back in touch with [him] after [he] called them"; that he "[e]ventually" had sign a document to retain his attorneys; and that he did not remember which of his surgeries was closest to the time when he saw the commercial.[4]

On May 20, 2022, Jones's attorneys identified him in a list of unfiled actions that was shared with Defendants. *See B & B Hardware, Inc. v. Fastenal Co.*, 688 F.3d 917, 920 (8th Cir. 2012). He filed this action on May 18, 2023. Two months later, Jones served his fact sheet on Defendants. In it, he stated that, in March 2022, he first discovered the Bair Hugger was used during his surgery from his medical records. In February 2024, Jones served an amended fact sheet on Defendants. In it, he stated that,

---

[4] Earlier in his deposition, Jones was asked whether he called his attorneys "before [he] had [his] second -- well third surgery with [the surgeon]?" Jones responded: "Probably did. Like I say, I can't remember exactly when I called them because time been moving on."

on February 15, 2024, he first discovered the Bair Hugger was used during his surgery from his medical records.[5]

Viewing the record in the light most favorable to Jones, the Court concludes that the doctrine of *contra non valentem* does not make his action timely.  *See In re Taxotere*, 995 F.3d at 391 ("[P]rescription runs 'from the time there is notice enough to call for *inquiry* about a claim, not from the time when the inquiry reveals facts or evidence sufficient to *prove* the claim.'  It 'does not necessarily wait for the pronouncement of a victim's physician or of an expert.'" (citation omitted)).  More than a year before he brought this action, Jones developed a periprosthetic joint infection that allegedly resulted from use of the Bair Hugger during his hip surgery; he underwent several revision surgeries; he saw a commercial that led him to retain his attorneys in this case; and some of his medical records were printed.  Almost one year to the day before he filed this action, Jones's attorneys identified him in a list of unfiled actions.  Jones could have requested and reviewed his medical records at any time after he was diagnosed with a periprosthetic joint infection.  The prescription period did not await review of his medical records to start running.  *See id.* at 392 ("Plaintiffs are not entitled to wait to sue until they are certain of what and/or who caused their injury.").  Jones's action is untimely.[6]

---

[5]  With respect to when Jones first learned that the Bair Hugger was used during his surgery, the parties disputed whether his amended fact sheet is a sham.  The Court need not resolve the dispute and assumes without deciding that his amended fact sheet is accurate.

[6]  Having concluded that Jones's action is untimely, the Court need not consider Defendants' remaining arguments for summary judgment.

## II. Motion to Exclude Expert Opinions and Testimony

Defendants moved to exclude the opinions and testimony of Dr. Theodoros Kelesidis. Having concluded that Jones's action is untimely, the Court denies as moot Defendants' motion to exclude.

## III. Conclusion

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket No. 63] is GRANTED.

2. Defendants' Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Theodoros Kelesidis [Docket No. 70] is DENIED.

3. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 11, 2025

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
